UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
ABBI BENTOV,

|  |  |
|---|---|
| Plaintiff | COMPLAINT WITH JURY DEMAND |
| -against- | Docket No.    15 CV 7011 |

THE CITY OF NEW YORK, WILLIAM BRATTON,
COMMISSIONER OF THE NEW YORK CITY POLICE
DEPARTMENT, THE POLICE DEPARTMENT OF THE
CITY OF NEW YORK, POLICE OFFICER KILEY JONES
(A Member of the New York City Police Department, Shield
No. 26626, Assigned to the 26th Precinct on September 2,
2014), and POLICE OFFICER JOHN DOE No. "1"(Intended to
be the Police Officers Who Arrested the Plaintiff on September
2, 2014) and POLICE OFFICERS JOHN DOE Nos. "2" through
"5"(Intended to be the Police Officers Who were present during
the course of the Plaintiff's arrest on September 2, 2014),

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Plaintiff by his attorney, MATTHEW A. KAUFMAN, ESQ., does state and say for his
Complaint, as follows:

## JURISDICTION

1.      The jurisdiction of this Court is invoked by Plaintiff pursuant to Title 28 of the
        United States Code, Sections 1331, 1343(3) & (4) and 1367.

2.      Venue is properly laid in the Southern District of New York under 28 U.S.C.
        §1391(b), in that the claim arose in this District.

## JURY DEMAND

3.      Plaintiff demands a trial by jury on all issues pursuant to the Seventh Amendment
        to the United States Constitution and Fed. R. Civ. P. 38.

-1-

## NATURE OF PROCEEDINGS

4.      This is a proceeding for compensatory and punitive damages owing to the Plaintiff as a result of violations of Civil Rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and under Federal law, particularly Title 42 of the United States Code, Section 1983. Supplemental claims are also made pursuant to New York State law pursuant to 28 U.S.C. § 1367.

## PARTIES

5.      The Plaintiff, Abbi Bentov, is a citizen and resident of the State of New Jersey.

6.      a.      Defendant City of New York [hereinafter referred to as "City"] is a Municipal Corporation, duly formed and created pursuant to the laws and statutes of the State of New York.

        b.      At all times material hereto, Defendant City, by its agents, servants and employees, as well as by the New York City Police Department [hereinafter "NYPD"] was responsible for the training and instruction of individuals employed by the NYPD.

        c.      Upon information and belief, Defendant City, by its agents, servants and employees, as well as by and through the NYPD, was responsible for the training and instruction of the individual Defendant Police Officers herein.

7.      That at all times hereinafter mentioned:

        a.      The individually named Defendant P.O. KILEY JONES was a duly sworn police officer of said NYPD and was acting under the supervision of said department and according to his official duties.

        b.      The Defendant Police Officers "JOHN DOE Nos. '1' to '5' were duly sworn police officers of said NYPD and were acting under the supervision of said department and according to their official duties.

8.      Defendant P.O. KILEY JONES at all times material hereto, is a Police Officer in the employ of Defendant(s) CITY and/or NYPD and assigned shield number 26626 and, upon information and belief, assigned to the 26th Precinct [hereinafter referred to as "P.O. Jones"].

9.      Defendant P.O. "JOHN DOE No. '1' at all times material hereto, is a Police Officer in the employ of Defendant(s) CITY and/or NYPD and assigned to the

26th Precinct and was accompanying Defendant P.O. Jones at the time the Plaintiff was arrested on September 2, 2014 [hereinafter referred to as "John Doe No. "1"].

10.     Defendants Police Officers "John Doe Nos. '2' to '5'" (Actual Names Unknown, Members of Defendant NYPD, assigned to the 26th Precinct on September 2, 2014) at all times material, were employed by Defendant(s) CITY and/or NYPD.

11.     Defendant William Bratton is the Commissioner of Defendant Police Department [hereinafter referred to as "Bratton"] and is sued here in his representative capacity as the Commissioner of Defendant NYPD.

12.     Defendant Police Commissioner Bratton, as the Commissioner of Defendant NYPD was at all times responsible for the policies, practices and/or customs of Defendant NYPD, a municipal agency of Defendant CITY. He is and was at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers under his command who are or were employed by the NYPD, including the Defendants named herein. He is sued in his individual as well as his representative official capacity as the Commissioner of Defendant NYPD.

13.     The Plaintiff has complied with all conditions precedent under New York Law:

    a.     On September 23, 2014, the Plaintiff served and filed a Notice of Claim upon Defendants in full compliance with Section 50-e of the N.Y. General Municipal Law, **Exhibit "A"**;

    b.     At least 30-days have expired since the service and filing of said Notice of Claim, without any resolution or adjustment by the municipal defendant.

    c.     The within action is timely commenced within one-year and 90-days after the happening of the events herein pursuant to Section 50-i of the N.Y. General Municipal Law.

14.     Defendant CITY is responsible, *inter alia*, for the management, administration, conduct and supervision of all personnel employed as police officers by Defendant NYPD to protect the safety of the public and the property of the public.

15.     Each and every act of Defendants alleged herein were done by Defendants, as individuals, or through their employees, servants and/or agents, under color and authority of the laws, statutes, ordinances, customs and usages of the State of New York and United States of America, and under their offices with the City and/or State of New York.

16.     Each and all of the acts of the individual Defendants herein were done while acting within the scope of their employment by Defendants CITY and/or NYPD.

17.     Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting in furtherance of their employment by Defendants City and/or NYPD.

18.     Hereinafter, Defendants Police Officer Jones and Police Officers "John Does Nos. '1' through '5'" may be collectively referred to as the "Defendant Police Officers."

## BACKGROUND

19.     At all times material hereto, the Plaintiff, Abbi Bentov resided at 17 West Englewood Avenue, Teaneck, New Jersey 07668.

20.     At all times material hereto, at approximately 2:00 a.m. on September 2, 2014, Defendant P.O. Jones was a Police Officer employed by Defendants City and/or NYPD.

21.     At all times material hereto, at approximately 2:00 a.m. on September 2, 2014, Defendants "John Does Nos. '1' to '5'" were Police Officers employed by Defendants City and/or NYPD.

22.     At all times material hereto, the "Henry Hudson Parkway" is a public roadway designating that portion of New York State Route 9A running from the southern location of West 72nd Street located within the County of New York, City and State of New York to a northern location of the Saw Mill River Parkway located in the area of the border of Bronx County and Westchester County [hereinafter referred to as the "Henry Hudson Parkway"].

23.     The geographic portion of the "Henry Hudson Parkway" located in the County of New York, City and State of New York between West 72nd Street and its northern point in New York County is colloquially referred to as the "West Side Highway."

24.     At all times material hereto, the geographic areas between 111th Street to 125th Street on the "Henry Hudson Parkway" is located in the County of New York, City and State of New York.

25.     During the morning hours of approximately 2:00 a.m. on September 2, 2014, the Plaintiff was operating a motor vehicle and traveling northbound on the "Henry Hudson Parkway" between 111th Street to 125th in the County of New York, City and State of New York.

26.    During the hour of approximately 2:00 a.m. on September 2, 2014, the Plaintiff was accompanied by a female friend who sat in the passenger's seat in the Plaintiff's vehicle while he was driving on the"Henry Hudson Parkway" between 111th Street to 125th in the County of New York, City and State of New York.

27.    During the morning hours of approximately 2:00 a.m. on September 2, 2014, Defendants P.O. Jones and "John Doe No. '1'" [hereinafter collectively referred to as the "Arresting Officers"] were operating a police motor vehicle on the "Henry Hudson Parkway" between 111th Street to 125th, in the County of New York, City and State of N.Y.

28.    While the Plaintiff was traveling northbound on the "Henry Hudson Parkway" between 111th Street to 125th, he observed the Defendant "Arresting Officers" engage the siren and flashing light bar atop their vehicle.

29.    The Defendant "Arresting Officers," after activating the siren and flashing bar atop their vehicle, directed the Plaintiff to drive his vehicle to the side of the roadway and to stop.

30.    The Plaintiff followed the directions of the Defendant "Arresting Officers" and stopped his vehicle on the shoulder of the northbound "Henry Hudson Parkway" in and around the geographic location of 125th Street in the County of New York, City and State of New York.

31.    One of Defendant Arresting Police Officers approached the Plaintiff, indicated the Plaintiff had been traveling in excess of the posted speed limit and requested him to produce his drivers license and registration, which he did.

32.    After a few minutes, one of the Defendant "Arresting Officers" told the Plaintiff to exit the vehicle.

   a.    The Plaintiff asked the Defendant "Arresting Officer" why he had to step out of the car.

   b.    The Defendant "Arresting Officer" refused to answer the Plaintiff's question, and told him to "cooperate", directing the Plaintiff go to the back of the Plaintiff's vehicle in the area of the trunk.

33.    When the Plaintiff reached the back of his car, one of the Defendant "Arresting Officers" told him to put his hands on the trunk of his car.

34.    After putting his hands on the trunk, the same Defendant "Arresting Officer" directed the Plaintiff to turn around, and proceeded to search the Plaintiff.

35.    The Defendant "Arresting Officer" advised the Plaintiff that he was being arrested for having failed to respond a 15 or 16 year old unpaid traffic summons.

36.    Defendant Arresting Officer directed the Plaintiff to turn around, and hurriedly put handcuffs on the Plaintiff's wrists in an extremely tight manner, causing the Plaintiff to suffer instant and immediate pain and discomfort.

    a.    The Plaintiff immediately complained to this Defendant Arresting Officer his wrist did not feel right, and he was in extreme pain from the handcuffs.

    b.    The Plaintiff immediately requested this Defendant Arresting Officer to loosen the handcuffs because they were too tight.

    c.    This Arresting Police Officer, in response to the Plaintiff's request to loosen the handcuffs told him:

        "don't worry about. It is a quick ride to the station."

    d.    The Defendant Arresting Officer then lead the Plaintiff into the rear of the Police Car and directed him to get into the car, which he did.

37.    Defendant Arresting Police Officers drove the Plaintiff to a local Police Precinct, which upon information and belief, was the 26th Precinct of the Defendant NYPD [hereinafter referred to as the "26[th] Precinct"].

38.    The Defendant Arresting Police Officers removed the Plaintiff from the rear of the police car, and brought him towards the entrance of the "26[th] Precinct."

39.    Throughout the journey to the "26[th] Precinct," the Plaintiff, having complained to Defendant "Arresting Officers" was in noticeable and obvious apparent discomfort, suffering pain in his wrists, particularly his now damaged left wrist.

40.    The Defendant "Arresting Officers" brought the Plaintiff into a waiting area near the entrance to the "26[th] Precinct" asking him if anything was injured:

    a.    The Plaintiff immediately told Defendant "Arresting Officers":

        "my left wrist is not doing too well."

    b.    Defendant Arresting Police Officer told the Plaintiff:

        "he should not say anything because then they are going to take him to the hospital, and if they take him to the

> hospital, [the Plaintiff] would not be getting before the
> judge in time and you will be sent to Rikers, or you can say
> there is nothing wrong."

    c.    Defendant Arresting Police Officer also told the Plaintiff that if he would go for medical treatment, then he would then be taken to Riker's Island to await his arraignment by the Court.

    d.    The Plaintiff, while suffering severe pain, was placed in further fear of his own personal safety by Defendant Arresting Police Officers' threats he would be taken to Riker's Island if he requested medical attention. As a result of Defendant Arresting Police Officers' conduct and statement, the Plaintiff did not receive medical attention at that time.

41.    Upon information and belief, Defendant Police Officers "John Doe Nos. '2' to '5'" were within the vicinity of the Plaintiff and Defendant Arresting Police Officers when the Plaintiff complained about the injuries to his wrists at the 26th Precinct.

42.    Defendant Police Officers "John Doe Nos. '2' to '5'" heard the Plaintiff's pleas to the Defendant Arresting Police Officer concerning his injured wrist and they wilfully and intentionally failed or otherwise refused to take any affirmative action to assist or help the Plaintiff.

43.    One of the Defendant Arresting Officer thereafter took the Plaintiff to a side room and placed into a cell and removed the handcuffs.

    a.    While in the cell, one of the Defendant Arresting Officers approached the Plaintiff and showed him a paper with information which he indicated the Plaintiff's female companion had written for the Defendant Arresting Officer to give to the Plaintiff.

    b.    The Defendant Arresting Officer, after showing the Plaintiff the paper with woman's contact information, taunted the Plaintiff by refusing to give the paper to the Plaintiff, and instead kept the paper for himself and walked away.

44.    The other Defendant Arresting Officer removed the Plaintiff from the cell.

    a.    As this Defendant Arresting Officer was removing the Plaintiff from the cell, he placed the handcuffs back on the Plaintiff's wrists.

      b.      The Plaintiff suffered further and additional pain immediately when the handcuffs were placed back on his wrists.

      c.      The Plaintiff immediately told the Defendant Arresting Officer that the handcuffs were causing him pain again.

45.      The Defendant Arresting Officer failed or otherwise refused to take any action to assist the Plaintiff, or otherwise reduce the pain the Plaintiff was suffering due to the handcuffs.

46.      The Defendant Arresting Officer brought the Plaintiff to a room to be fingerprinted.

47.      After being finger-printed, Defendant Arresting Officer brought the Plaintiff back to the jail cell, and the handcuffs were then removed from his wrists.

48.      While back in the cell, Defendant Arresting Officer told the Plaintiff the finger-printing did not properly work, and he would have to be finger-printed a second time.

49.      The Defendant Arresting Officer again took the Plaintiff from the cell, again placed him in hand-cuffs causing him to suffer further, additional pain.

      a.      The Defendant Arresting Officer brought the Plaintiff back into the room to be finger-printed a second time.

      b.      Defendant Arresting Officer, while finger-printing the Plaintiff the second-time, pressed his entire body weight hard onto the Plaintiff's hands, causing the Plaintiff to sustain additional pain and harm to his wrists, and further injuring the Plaintiff.

50.      After second finger-printing, the Plaintiff was taken back to the jail cell, and the handcuffs were again removed from his wrists.

51.      While back in the cell, Defendant Police Officer told the Plaintiff the finger-printing did not properly work again, and he would have to be finger-printed a third time.

52.      The Defendant Arresting Officer removed the Plaintiff from the cell a third time.

      a.      The Defendant Arresting Officer brought the Plaintiff back into the room to be finger-printed a third time.

    b.    Defendant Arresting Officer, while finger-printing the Plaintiff the third-time, pressed-down even harder with his entire body weight hard onto the Plaintiff's hands, causing the Plaintiff to sustain additional pain and harm to his wrists, further injuring the Plaintiff.

53.    Hours later, on September 2, 2014, the Plaintiff was again placed in transport hand-cuffs, chained and hand-cuffed to other prisoners in order to be transported to Downtown Manhattan where he was placed in a large cell. This hand-cuffing caused the Plaintiff to suffer additional pain and discomfort.

54.    After arriving to Downtown Manhattan, the Plaintiff was brought to another location, where he was again fingerprinted.

55.    On September 2, 2014, the Plaintiff was brought to the Criminal Court of the City of New York, Part AP-AR3, before the Hon. Abraham Clott, J., to be arraigned.

56.    On September 2, 2014, the Plaintiff was arraigned in the Criminal Court of the City of New York, Part AP-AR3 [Hon. Abraham Clott, J.] at which time he was charged by way of Criminal Court Complaint with (1) Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree in violation of N.Y. Vehicle & Traffic Law Section 511 (1) (a); and (2) Unlicensed Driving in violation of N.Y. Vehicle & Traffic Law Section 509 (1) bearing Criminal Court Docket Number 2014NY067666, hereinafter referred to as the ["Misdemeanor Complaint"].

57.    A true copy of the "Misdemeanor Complaint" is annexed hereto as **Exhibit "B"**.

58.    On September 2, 2014, the Plaintiff entered a plea to a traffic infraction in violation of N.Y. Vehicle & Traffic Law Section 509 in satisfaction of the "Misdemeanor Complaint," along with a fine of $75.00.

59.    The next day, on or about September 3, 2014, the Plaintiff was still suffering pain in his wrists, and the wrists were swelling, particularly the left wrist.

60.    On or about September 3, 2014, the Plaintiff sought out and received medical treatment for pain he was having in his wrists, and particularly his left wrist.

    a.    During this first medical visit, a physician examined the Plaintiff's wrists.

    b.    During this first medical visit, the Plaintiff was referred to another physician to diagnose whether he sustained any nerve or other damage to his wrist due to the handcuffs.

61.   After September 3, 2014, the Plaintiff went to another physician to have his wrists examined and was prescribed medications and a wrist brace.

62.   After September 3, 2014, the Plaintiff continued to suffer from significant and substantial pain in his left wrist, which pain prohibited him from using it in any meaningful manner.

63.   After September 3, 2014, the Plaintiff sought additional neurological tests but continued to suffer from pain and limitation in the use of his left hand and wrist.

64.   On or about September 8, 2014, the Plaintiff was advised by the Clerk's Office for the Ulster County Justice Court that:

   a.   Two Summonses had been issued to the Plaintiff on or about December 29, 1999 and appeared on that Court's calendar in 2000.

   b.   One of the tickets the computer for the Ulster County Justice Court indicated that the Plaintiff had appeared and that ticket was disposed in 2000.

   c.   The computer for the Ulster County Justice Court indicated that a second ticket had been separated from the first on that same date, resulting in the summons being endorsed "failure to answer" and a default judgment and license suspension as of August 9, 2000 being entered against him by New York.

   d.   The Plaintiff never received notification of the suspension due from this second ticket.

65.   On or about September 8, 2014, the Plaintiff agreed to enter a plea of guilty to a violation of N.Y. Vehicle and Traffic Law Section 1172, subd. a, and was fined $75.00 plus a $25.00 surcharge, **Exhibit "C"**.

66.   During the Fall of 2014, the Plaintiff continued to seek and receive treatment of his left hand and left wrist.

   a.   During the Fall of 2014, examinations were conducted of the Plaintiff's left wrist and hand.

   b.   On November 5, 2014, an MRI performed on his left hand and wrist revealing damage.

      c.     The Plaintiff was diagnosed as sustaining, *inter alia*, torn tendons and a triangular fibrocartilage complex tear of his left wrist as a result of Defendant Arresting Police Officers using excessive and improper force with the handcuffs and subsequent fingerprinting, and not releasing the pressure when the Plaintiff requested.

67.     On or about November 20, 2014, the Plaintiff underwent a surgical procedure on his left wrist, hand and arm at the Holy Name Medical Center in Teaneck New Jersey due to the injuries and pain he sustained as a result of Defendants' conduct.

68.     As a result of the foregoing, the Plaintiff sustained permanent injuries.

69.     That neither reasonable nor probable cause existed for the individual Defendant Arresting Police Officers to use the amount of force they exerted in handcuffing and fingerprinting the Plaintiff, and such force constituted unreasonable force.

70.     That neither reasonable nor probable cause existed for the individual Defendant "Arresting Officers" use of excessive force against the Plaintiff in applying the hand-cuffs and finger-printing.

71.     The Defendant "Arresting Officers'" conduct, including their statements and use of excessive force regarding the placement of the hand-cuffs on the Plaintiff's wrists, ignoring his pleas for medical attention, intimidating him so as to coerce him to refrain from seeking medical attention as well as the use of excessive pressure in finger-printing were done with actual malice and utter disregard the situation and in violation of the Plaintiff's rights under the Constitutions and laws of the United States and of the State of New York.

72.     The individual Defendant Police Officers made false and untruthful statements and allegations against the Plaintiff in order to intimidate the Plaintiff, and to deter him from seeking needed and necessary medical attention, notwithstanding the fact the Plaintiff sustained serious, grievous and permanent injury to his hands and wrists, and particularly his left hand and wrist.

73.     The individual Defendant Arresting Police Officers conduct included, but not limited to, using excessive and unnecessary and unreasonable force in the face of the instant situation and intimidation so as to deter the Plaintiff from seeking medical attention.

74.     Upon information and belief, the individual Defendants Police Officers' conduct against the Plaintiff was a mere pretext to provide color to their conduct.

75. Police Officer Defendants, having observed and heard the Plaintiff's physical plight and emotional distress, had an affirmative obligation to assist the Plaintiff and provide medical attention, which they failed and/or refused to provide.

76. The Plaintiff, Abbi Bentov sustained emotional and physical injury as a direct result of the aforementioned conduct by the Defendants, including, but not limited to discomfort, pain and suffering, mental anguish, fright, shock and other injuries.

77. Defendants CITY, NYPD and Bratton failed to properly train the Defendant Police Officers on proper police procedures, including how to communicate with civilians, how to conduct a stop, search and seizure, conducting warrantless seizures and arrests of individuals, the proper use of force during an arrest, the placing of suspects in hand-cuffs (such as the Plaintiff herein), the finger-printing of arrestees (such as the Plaintiff herein), the obligation and manner to provide truthful information in police reports as well as to act truthfully and honestly with the general public and not to threaten bodily harm, including the proper way and method to respond to requests for medical attention by an arrestee (such as the Plaintiff herein).

78. Neither reasonable nor probable cause existed for the Defendant Police Officers' conduct towards the Plaintiff herein.

79. The Defendant Police Officers used excessive force against the Plaintiff, without justification or cause.

80. The Plaintiff suffered emotional and physical injury as a direct result of the aforementioned conduct by the Defendants, including, but not limited to discomfort, pain and suffering, mental anguish, fright, shock and other injuries.

### AS AND FOR A FIRST CLAIM FOR RELIEF
**(Violation of Civil Rights, 42 USC § 1983)**

81. Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "80" with the same force and effect as if herein more fully set forth.

82. All of the above Defendant Police Officers, by their foregoing acts, intentionally and willfully acted jointly and severally under color of law, statute, ordinance, regulations, customs and practice of the State of New York, to deprive the Plaintiff of his rights, privileges and immunities secured to him by the Constitutions and laws of the United States and New York.

83. All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

84.     All of the aforementioned acts deprived the Plaintiff of the rights and protections guaranteed by the First, Fourth, Fifth,  Eighth and Fourteenth Amendments to the Constitution of the U.S. in violation of 42 U.S.C. § 1983.

85.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with all the actual and/or apparent authority attendant thereto.

86.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said Department.

87.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

88.     The acts complained of deprived the Plaintiff of his rights:

    a.      Not to have excessive force imposed upon him;
    b.      Not to be restrained in hand-cuffs by the use of unreasonable and improper force, so as to avoid unwarranted and unneeded bodily harm;
    c.      Not to be finger-printed in a manner so as to subject him to unreasonable and improper force, so as to avoid unwarranted and unneeded bodily harm;
    d.      Not to have summary punishment imposed upon him.

89.     The foregoing violations of the Plaintiff's Constitutional rights were undertaken under color of law, statutes, regulations and Constitution.

90.     As a result of the foregoing conduct by Defendants herein, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than TWO MILLION ($2,000,000.00) DOLLARS and punitive damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS as against the individual defendants.

## AS AND FOR A SECOND CLAIM FOR RELIEF
**(Excessive Force)**

91.     Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "80" and "82" to "90" with the same force and effect as if herein more fully set forth.

92.     The level of force employed by the Defendants was objectively unreasonable and in violation of the Plaintiff's Constitutional rights.

93.    As a result of the foregoing, the Plaintiff suffered significant bodily injuries, as well as a deprivation of liberty, invasion of privacy, severe emotional distress, public humiliation and violation of his constitutional rights.

94.    As a result of the foregoing conduct by Defendants herein, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than TWO MILLION ($2,000,000.00) DOLLARS and punitive damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS as against the individual defendants.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (Municipal Liability)

95.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "80", "82" to "90" and "92" to "94" with the same force and effect as if herein more fully set forth.

96.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

97.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendant CITY and the NYPD all under the supervision of ranking officers of said department.

98.    The foregoing customs, policies, usages, practices, procedures and rules of Defendant CITY and the NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff.

99.    The foregoing customs, policies, usages, practices, procedures and rules of Defendant CITY and the NYPD were the direct and proximate cause of the constitutional violations suffered by the Plaintiff as alleged herein.

100.   The foregoing customs, policies, usages, practices, procedures and rules of Defendant CITY and the NYPD were the moving force behind the constitutional violations suffered by the Plaintiff as alleged herein.

101.   As a result of the foregoing customs, policies, usages, practices, procedures and rules of Defendant CITY and NYPD, the Plaintiff was subjected to unlawful and excessive force resulting in permanent and disabling injuries, particularly, where as here, the Plaintiff was being arrested for a non-violent misdemeanor traffic offense over 14-years old.

102.    The individual Defendant Police Officers, collectively and individually, while acting under color of State law, were directly and actively involved in violating the constitutional rights of the Plaintiff.

103.    The individual Defendant Police Officers, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate Police Officers, and were directly responsible for the violation of the Plaintiff's Constitutional rights.

104.    All of the foregoing acts by Defendant Police Officers deprived the Plaintiff, of Federally protected rights, including, but not limited to, the right:

    a.    Not to have excessive force imposed upon him;
    b.    To have hand-cuffs properly applied;
    c.    To be finger-printed without causing undue and unnecessary pain;
    d.    To properly assist and provided medical assistance;
    e.    To properly respect personal and private relationship and non-material communications involving and between civilians;
    f.    Not to have summary punishment imposed upon him.

105.    As a result of the foregoing the Plaintiff sustained, *inter alia*, loss of liberty, emotional distress, embarrassment, humiliation, deprivation of his rights and is entitled to compensatory and punitive damages in an amount to be determined by trial, but not less than TWO MILLION ($2,000,000.00) DOLLARS.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (First Supplemental State Claims Against Defendants)

106.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "80", "82" to "90", "92" to "94" and "96" to "105" with the same force and effect as if herein more fully set forth.

107.    The Plaintiff asserts Supplemental Jurisdiction over claims arising under New York law, 28 USC § 1367.

108.    The Supplemental claims fall within one or more of the exceptions as outlined in New York local law, C.P.L.R. § 1602.

109.    Defendant Police Officers' aforementioned actions placed the Plaintiff in apprehension of imminent harmful and offensive bodily contact.

110.    Defendant Police Officers further falsely arrested the Plaintiff, assaulted, battered, negligently and/or intentionally inflicted emotional distress upon the Plaintiff, and otherwise intimidated the Plaintiff by intentional infliction of emotional distress

by scaring him to decline necessary and needed medical treatment, otherwise he would be detained longer and sent to Riker's Island for holding.

111.   As a result of Defendant Police Officers' conduct, the Plaintiff has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

112.   Defendant Police Officers used unnecessary, unreasonable and excessive force against the Plaintiff in a harmful and offensive manner under the totality of the attendant circumstances.

113.   Defendant Police Officers acted without privilege or the Plaintiff's consent.

114.   As a result of the foregoing, the Plaintiff sustained, *inter alia*, physical injuries, emotional distress, embarrassment and humiliation due to Defendants' conduct.

115.   As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages to be determined by the Court.

116.   As a result of the foregoing conduct by Defendants herein, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS.

### AS AND FOR A FIFTH CLAIM FOR RELIEF
**(Second Supplemental Claim Against Defendants)**

117.   Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "80", "82" to "90", "92" to "94", "96" to "105" and "107" to "116" with the same force and effect as if herein more fully set forth.

118.   Defendant Police Officers acted in a manner so as to intentional and purposefully inflict pain, and were objectively unreasonable in their conduct.

119.   Defendant Police Officers knew or should have known their conduct, including the continued and repeated following conduct would inflict emotional distress upon the Plaintiff:

   a.   Placing of hand-cuffs on the Plaintiff in an excessively tight manner on the Plaintiff's wrists, notwithstanding the Plaintiff's protests and obvious indications of pain;

b.    Placing extreme pressure and weight on the Plaintiff's hands and wrists during finger-printing, particularly after the Plaintiff had affirmatively complained concerning injury and pain to his wrists, notwithstanding the Plaintiff's protests and obvious indications of pain;

c.    Threatening to transfer the Plaintiff to Rikers' Island should he seek medical attention for his injuries notwithstanding the Plaintiff's complaints and obvious indications of pain; and,

d.    Taunting a note in front of the Plaintiff which had been prepared to be given to the Plaintiff by the Plaintiff's companion on September 2, 2014, and Defendant Police Officer otherwise keeping the note for his own personal use.

120.    As a result of the foregoing, the Plaintiff suffered physical bodily injuries, as well significant emotional trauma, severe emotional distress along with public humiliation.

121.    As a result of the foregoing conduct by Defendants herein, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than TWO MILLION ($2,000,000.00) DOLLARS and punitive damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS as against the individual defendants.

### AS AND FOR A SIXTH CLAIM FOR RELIEF
**(Third Supplemental Claims Against Defendants)**

122.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "80", "82" to "90", "92" to "94", "96" to "105", "107" to "116" and "118" to "121" with the same force and effect as if herein more fully set forth.

123.    Defendants CITY and NYPD, by their employees, agents, and/or servants were negligent, careless, and reckless in failing to properly and reasonably investigate any allegations made against the Plaintiff before assaulting, battering, arresting, and wrongfully detaining the Plaintiff.

124.    Defendants CITY and NYPD, by their employees, agents, and/or servants were improperly used excessive force against the Plaintiff without reasonable nor probable cause, using unnecessary force, and otherwise inflicting bodily injuries and emotional distress upon the Plaintiff without justification.

125.    Defendants CITY and NYPD, by their employees, agents, and/or servants further violated by the Plaintiff's rights by not assisting him when necessary and needed.

-17-

126.    Defendants CITY and NYPD, were otherwise careless, and reckless with regard to their use of police powers for wrongful purposes and inflicting physical and emotional damages upon the Plaintiff without justification, privilege or probable or reasonable cause.

127.    Defendants CITY and NYPD improperly trained of the Defendant Police Officers.

128.    Defendants CITY and NYPD were further responsible and liable as the employers of the Defendant Police Officers who were otherwise employed and acting as employees of Defendants CITY and NYPD.

129.    As a result of the foregoing conduct by Defendants herein, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS.

WHEREFORE, Plaintiff respectfully prays this Court for a judgment as follows:

A)    TWO MILLION ($2,000,000.00) DOLLARS on the First, Second and Third Claims for Relief as compensatory damages as against Defendants CITY, NYPD, Police Officer Jones and Police Officers "John Doe Nos. '1' through '5', and that said judgment be jointly and severally on behalf of the Plaintiff, Abbi Bentov;

B)    TWO MILLION ($2,000,000.00) DOLLARS on the First, Second and Third Claims for Relief as punitive damages against Defendants Police Officer Jones and Defendant "Police Officers John Doe Nos. '1' through '5'", jointly and severally on behalf of the Plaintiff, Abbi Bentov;

C)    ONE MILLION ($1,000,000.00) DOLLARS on the Fourth and Fifth Claims for Relief as compensatory damages as against Defendants CITY, NYPD, Police Officer Jones and "Police Officers John Doe Nos. '1' through '5', and that said judgment be jointly and severally on behalf of the Plaintiff, Abbi Bentov;

D)    Reasonable attorneys fees pursuant to 42 U.S.C. § 1988 in an amount to be determined by this Court;

as well as costs, fees disbursements.

Dated: New York, N.Y.
       September 2, 2015

Yours, etc.,
MATTHEW A. KAUFMAN

By: Matthew A. Kaufman – (MK 0598)
Attorney for Plaintiff
225 Broadway - Suite 1806
New York, N.Y. 10007
Tel. No. (212) 619-2200
MAK File No.      15,488.301

-19-

**Docket No.    15 CV 7011**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**ABBI BENTOV,**

**Plaintiff,**

-against-

**THE CITY OF NEW YORK,** *et al.,*

**Defendants.**
_____

COMPLAINT
_____

**MATTHEW A. KAUFMAN**
ATTORNEY FOR PLAINTIFF
225 BROADWAY - SUITE 1606
NEW YORK, N.Y. 10007
TEL. NO. (212) 619-2200
FILE NO.    15,488.301